## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DEBRA HEVERLY CAMPBELL,          )      Case No. 3:16-cv-118

                                  )

            Plaintiff,           )      JUDGE KIM R. GIBSON

                                  )

        v.                      )

                                  )

M&T BANK,                    )

                                  )

            Defendant.         )

## <u>MEMORANDUM OPINION</u>

The United States Code is the official compilation of codified federal law. As of March 2017, the U.S. Code contains 54 titles. Those 54 titles contain hundreds of chapters, and those hundreds of chapters contain thousands of laws. To a layperson, it may seem as though all those laws are bases upon which to sue. After all, if a law is broken, is it not up to the courts to declare it so?

The simple answer is maybe. Our legal system has certain threshold requirements that must be met before a person can sue. These requirements include the existence of a private cause of action; just because a law was broken does not mean that Congress intended that law be judicially enforceable by a private litigant. This means that flipping through the U.S. Code in search of aptly named laws upon which to sue is a poor litigation strategy. Which brings us to this case.

On April 11, 2016, Debra Heverly Campbell—representing herself—sued M&T Bank in the Blair County Court of Common Pleas.[1]  Campbell's case arises out of the foreclosure of her residence in Honolulu, Hawaii, in the early 2000s.  M&T Bank removed the case to this Court on May 26, 2016.  (ECF No. 1.)  Pending before the Court is M&T Bank's motion to dismiss Campbell's complaint (ECF No. 3).  For the reasons that follow, M&T Bank's motion to dismiss is **GRANTED**.

## I.      Background

Although Campbell's recital of the facts underlying this case is disjointed and difficult to understand, the Court has attempted below to distill the relevant facts from her complaint and the exhibits thereto (ECF No. 1-3), which the Court may also consider in deciding a motion to dismiss.  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).  The Court accepts as true the factual allegations of Campbell's complaint for purposes of deciding the motion to dismiss, but "[w]here those allegations are contradicted by written exhibits that [Campbell] attached to [her] . . . complaint, . . . the exhibits trump the allegations."  *Abcarian v. McDonald*, 617 F.3d 931, 933 (7th Cir. 2010).

On April 14, 2000, Pohaku Funding Investment Corporation—as trustee for the Pohaikealoha Trust—obtained a $400,000 loan from Keystone Financial Bank, N.A.  (ECF No. 1-3 at 37-40, 41-42).[2]  Campbell was a guarantor for this loan (*id.*), and asserts that she was the beneficiary of the Pohaikealoha Trust (*see id.* ¶ 84).  The purpose of the loan was to finance the

---

[1] Campbell initially filed suit in the Blair County Court of Common Pleas on August 10, 2015, but failed to file a complaint in that case.  (ECF No. 1-2 at 2.)

[2] Although Campbell alleges she entered into this agreement (ECF No. 1-3 ¶ 9), the promissory note provides that the agreement was between Pohaku Funding Investment Corporation and Keystone Financial Bank, N.A., and that Campbell was only a guarantor (ECF No. 1-3 at 37-40, 41-42).

purchase of an apartment in Honolulu, Hawaii, at Colony Surf Apartments. (*Id.* ¶ 9.) At the time, Keystone Bank already held a mortgage on that property. (*Id.*; *see also id.* at 45.) Campbell made the payments on this loan directly to Keystone Bank—presumably through her bank account with Keystone Bank. (*Id.* ¶ 8-9.)

In October 2000, M&T Bank became the successor to Keystone Bank via merger. (*Id.* ¶ 10.) When M&T Bank merged with Keystone Bank, M&T Bank without notice placed 10-business-day holds on all deposits. (*Id.*) This caused Campbell's loan payments to become late and caused her to incur late and overdraft fees. (*Id.*) At the same time, M&T Bank canceled Campbell's lines of credit and demanded immediate payment on her outstanding balances. (*Id.* ¶ 11.) Campbell then closed her accounts with M&T Bank, opened a bank account with a bank in California, and began making her loan payments through that bank. (*Id.* ¶¶ 14-15.)

Campbell is not clear on the chronology of the subsequent events, but as best the Court can make out the following occurred: although Campbell remained current on her loan payments to M&T Bank, she fell behind on her payment of maintenance fees to Colony Surf Apartments due to medical issues involving her daughter. (*Id.* ¶ 28.) Campbell was never more than three months behind on her maintenance-fee payments and was making monthly catch-up payments. (*Id.*) Nevertheless, Colony Surf sent Keystone Bank—and not M&T Bank, Campbell, or the Pohaikealoha Trust—a notice of default for Campbell's maintenance fees plus legal fees.[3] (*Id.* ¶¶ 20, 29, 33.) Campbell's default was not cured by the relevant deadline. (*Id.* ¶ 31.)

---

[3] Although Campbell alleges the notice of default was sent only to Keystone Bank, this is a puzzling assertion given that M&T Bank had subsumed Keystone Bank via merger. By implication, any notice sent to Keystone Bank after the merger was sent to M&T Bank. The Court will nevertheless assume that only Keystone Bank received the notice of default.

Colony Surf thereafter refused to accept any more monthly payments from Campbell unless she paid all her arrears and legal fees, which totaled approximately $16,500. (*Id.* ¶ 36.)

At some point during these events, Campbell also filed for bankruptcy under Chapter 13 "in an effort to have a federal judge address the egregious legal fees being charged by Colony Surf," though Campbell later withdrew her bankruptcy filing. (*Id.* ¶¶ 37, 39.) Although Campbell claims she never fell behind on her payments to M&T Bank (*id.* ¶ 28), she contradicts this assertion later in her complaint by stating that she paid an "amount owed to Keystone Bank/M&T Bank," (*id.* ¶ 39).

It appears that Campbell's default to Colony Surf was not timely addressed, and Colony Surf filed an accelerated-foreclosure action in the Circuit Court of the First Circuit for the State of Hawaii. (*Id.* ¶ 40; *see* ECF No. 1-3 at 56.) Campbell admits she was served with notice of the accelerated-foreclosure action. (ECF No. 1-3 ¶ 26.) The Pohaku Funding Investment Corporation—one of the defendants in the accelerated-foreclosure action—was represented by counsel in that case. (ECF No. 1-3 at 56.) Colony Surf prevailed in that action, and on March 27, 2003, the court cancelled Pohaku's sublease to the property. (*Id.*) The court also ordered that Pohaku "and all persons claiming any interest in the leasehold property . . . [were] forever barred and foreclosed of and from any and all right, title, and interest and claims at law or equity in and to" the property, and awarded possession to Colony Surf. (*Id.* at 57.)

After being awarded possession, Colony Surf transferred the property to M&T Bank. (*Id.* ¶ 61.) On October 18, 2004, M&T Bank sold the property to a third party. (*Id.* ¶ 71; *id.* at 45.) At some point before the sale, M&T Bank and Colony Surf entered into an agreement about how the proceeds of the property's sale would be divided. (*See id.* at 48-52.) That agreement is the

crux of this case; Campbell alleges the agreement is a "kickback/quid pro quo agreement," and states that she did not learn about the agreement until "almost two years after the loss of her home and its subsequent sale by M&T Bank." (*Id.* ¶¶ 4-6.) She further states that she was not able to obtain an escrow settlement statement regarding the property's sale and the division of funds until August 2012. (*Id.* ¶ 3.)

Campbell also alleges that M&T Bank did something unlawful with the loan and her bank account. At some point in 2009 Campbell obtained a statement and lien release from M&T Bank's collections department. (*Id.* ¶ 8.) Campbell alleges she also spoke to an M&T Bank employee, who told her that her loan with M&T Bank was written down to zero when M&T took over Keystone. (*Id.*) Campbell states that this occurred three years before the foreclosure proceedings, meaning she made payments on the loan while "unaware that loan had been written down to zero, and . . . that the loan was never paid off, but rather 'satisfied' by an alleged forty thousand dollar debit from [her] account in 2006." (*Id.*) Campbell implies that this alleged debit constitutes unlawful conduct in light of the fact that she closed her accounts with M&T Bank in 2000. (*See id.*)

On August 10, 2015, Campbell, representing herself, filed a praecipe for writ of summons against M&T Bank in the Pennsylvania Court of Common Pleas for Blair County. (ECF No. 1-2 at 2.) Campbell failed to file a complaint in that case. (*Id.*) On April 11, 2016, Campbell filed another case in the Blair County Court of Common Pleas, but this time did file a complaint. (ECF No. 1-4 at 2.) The two cases were consolidated by the Court of Common Pleas, (*id.*) and M&T thereafter removed the case to this Court (ECF No. 1.)

Campbell's complaint contains 15 counts; 3 common-law counts and 12 federal counts. Specifically, Campbell has sued M&T Bank for (1) fraud, (2) breach of fiduciary duty, (3) material breach of contract, (4) a violation of the False Claims Act (31 U.S.C. § 3731(b)), (5) bank fraud (18 U.S.C. § 1344), (6) a RICO violation involving bank fraud (18 U.S.C. § 1963), (7) theft, embezzlement, or misapplication by bank officer or employee (18 U.S.C. § 656), (8) fraud concerning bank entries, reports, and transactions (18 U.S.C. § 1005), (9) wire fraud affecting a financial institution (18 U.S.C. § 1343), (10) mail fraud affecting a financial institution (18 U.S.C. § 1341), (11) fraud concerning FDIC transactions (18 U.S.C. § 1007), (12) disclosure of classified information (50 U.S.C. § 783), (13) communication of restricted data (42 U.S.C. § 2274), (14) obstruction of justice (18 U.S.C. § 1581), and (15) unfair or deceptive acts or practices by state chartered banks (15 U.S.C. § 45).

## II.     Standard of Review

M&T Bank has filed a motion to dismiss Campbell's complaint on the basis that it fails to state a claim upon which relief can be granted (Federal Rule of Civil Procedure 12(b)(6)) and on the basis that Campbell has failed to join an indispensable party (Rule 12(b)(7)).

### A.     Failure to State a Claim upon Which Relief Can Be Granted

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) allows a party to seek dismissal of a complaint for failure to state a claim upon which relief can be granted. In determining the sufficiency of a complaint challenged under Rule 12(b)(6), a district court must conduct a two-part analysis. First, the court should separate the factual and legal elements of the claims. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d

Cir. 2009). Second, the court must determine whether the factual matters alleged are sufficient to establish that the plaintiff has a "plausible claim for relief." *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The complaint, however, need not include "detailed factual allegations." *Phillips*, 515 F.3d at 231 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

The court must also accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to the non-moving party. *See id.* at 228 (citing *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 653 (3d Cir. 2003)). But "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action . . . do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Rather, the complaint must present sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir .2010) (quoting *Iqbal*, 556 U.S. at 678).

Ultimately, whether a plaintiff has stated a "plausible claim for relief" is a context-specific inquiry that requires the district court to "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted). The record to consider in making this determination includes the complaint and any "document integral or explicitly relied on in the complaint." *U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (emphasis and citation omitted). If a claim is vulnerable to dismissal under Rule 12(b)(6), the district court must permit a curative amendment regardless of whether a plaintiff seeks leave to amend, unless amendment would be inequitable or futile. *Phillips*, 515 F.3d at 236 (citation omitted).

### B.    Failure to Join an Indispensable Party

Rule 12(b)(7) allows a party to seek dismissal of a claim for failure to join a required party.  As with (12)(b)(6) challenges, in analyzing a motion under Rule 12(b)(7) the court must accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to the non-moving party.  *See Jurimex Kommerz Transit G.M.B.H. v. Case Corp.*, 65 F. App'x 803, 805 (3d Cir. 2003).  In evaluating a 12(b)(7) motion, the court applies the two-part test found in Rule 19.  Rule 19(a) provides that an absent person is a necessary party if he is subject to service of process and either: (1) in his absence, complete relief cannot be accorded among the parties; or (2) the absent person claims an interest in the subject matter of the case and his absence will, as a practical matter, prejudice his ability to protect that interest or result in multiple or otherwise inconsistent obligations.

If a person is necessary under Rule 19(a) but cannot be joined, the court must determine whether the case should proceed among the existing parties or be dismissed.  Fed. R. Civ. P. 19(b).  In making this determination, the court must consider the extent to which prejudice will result to the non-party or the current parties as a result of the non-party's absence, the extent to which any such prejudice could be lessened, whether a judgment rendered in the non-party's absence would be adequate, and whether the plaintiff has an adequate remedy if the case were to be dismissed.  Fed. R. Civ. P. 19(b)(1)-(4).

## III.    Analysis

A threshold issue warrants discussion before addressing the merits of M&T Bank's motion to dismiss, namely Campbell's failure to file a response to M&T Bank's motion.  This Judge's Practices and Procedures provide that responses to motions to dismiss "shall be filed

within 21 days from the date of service of the motion."[4]  Although district courts may grant

motions by default when they are truly unopposed, the United States Court of Appeals for the

Third Circuit has counseled that district courts should not grant motions to dismiss against pro

se plaintiffs without analyzing the merits of the motion.  *Stackhouse v. Mazurkiewicz*, 951 F.2d 29,

30 (3d Cir. 1991); *see also Xenos v. Hawbecker*, 441 F. App'x 128, 131 (3d Cir. 2011) ("unless a

plaintiff's failure to oppose a motion can truly be understood to reflect that the motion is

unopposed—for instance, when the plaintiff is represented by counsel—we have expressed a

preference for an assessment of the complaint on its merits" (citing *Stackhouse*, 951 F.2d at 30)).

Thus, the Court will assess the merits of M&T Bank's motion to dismiss notwithstanding

Campbell's failure to respond.

M&T Bank advances multiple arguments for why Campbell's complaint should be

dismissed.  Specifically, it argues that the three state-law claims are timebarred and that the

statutes of limitations were not tolled, that the False Claims Act claim does not present a viable

claim for relief and suffers from procedural defects, that seven claims are predicated on criminal

statutes that do provide a private right of action[5], that the claim for a RICO violation involving

bank fraud does not present a viable claim for relief and is timebarred, and that the three

remaining claims fail as a matter of law.  M&T Bank argues further that the Court lacks

---

[4] *See* Practices and Procedures of Judge Kim R. Gibson, available at
http://www.pawd.uscourts.gov/sites/pawd/files/Gibson-PP-201702.pdf (effective February 16, 2017),
§ II.D.4.  This section was identical in the version in effect at the time M&T Bank filed its motion.
[5] Courts use the terms "private right of action" and "private cause of action" interchangeably.  *Wisniewski
v. Rodale, Inc.*, 510 F.3d 294, 296 n.3 (3d Cir. 2007) (citations omitted).  For consistency, the Court will use
"private right of action" throughout this memorandum opinion.

jurisdiction over Campbell's claims under the so-called *Rooker-Feldman* doctrine,[6] and that her claims are barred by res judicata and collateral estoppel. Lastly, M&T Bank argues that—even if Campbell has stated a valid claim—her complaint should be dismissed for failure to join the Kalakaua Land Trust, which M&T Bank asserts is an indispensable party.

### A.    Counts Five, Seven, Nine, Ten, Eleven, Twelve, Thirteen, Fourteen, and Fifteen

As an initial matter, the Court will dismiss counts five, seven, nine, ten, eleven, twelve, thirteen, fourteen, and fifteen because the statutes upon which those counts are predicated do not provide a private right of action. These nine counts are for (1) bank fraud under 18 U.S.C. § 1344; (2) theft, embezzlement, or misapplication by bank officer or employee under 18 U.S.C. § 656; (3) wire fraud affecting a financial institution under 18 U.S.C. § 1343, (4) mail fraud affecting a financial institution under 18 U.S.C. § 1341; (5) fraud concerning FDIC transactions under 18 U.S.C. § 1007; (6) disclosure of classified information under 50 U.S.C. § 783; (7) communication of restricted data under 42 U.S.C. § 2274; (8) obstruction of justice, purportedly under 8 U.S.C. § 1581;[7] and (9) unfair or deceptive acts or practices by state-chartered banks under 15 U.S.C. § 45.

Although Congress can by law create rights or obligations, it does not automatically follow that private parties can enforce those rights or obligations through the judicial process. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002). Frequently—and for good reasons—only the executive can enforce a federal statute. Other federal laws create individual rights that are

---

[6] That doctrine takes its name from two Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), and bars federal district and circuit courts from reviewing state-court decisions. *Gary v. Braddock Cemetery*, 517 F.3d 195, 200-01 (3d Cir. 2008).

[7] No such statute exists. As best the Court can make out, Campbell intends to assert this claim under 18 U.S.C. § 1581—which does exist.

enforceable only by agencies, *see, e.g., Commc'ns Workers v. Beck*, 487 U.S. 735, 742 (1988), or not enforceable at all, *see, e.g., Alden v. Maine*, 527 U.S. 706 (1999). But many federal laws are indeed enforceable by private parties in judicial proceedings. Whether a private party can bring suit to enforce a statute depends on if that statute—expressly or by implication—provides a private right of action. On this point congressional intent is determinative because "private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) (citing *Touche Ross & Co. v. Redington*, 442 U.S. 560, 578 (1979)); *see also Halliburton Co. v. Erica P. John Fund, Inc.*, ___ U.S. ___, 134 S. Ct. 2398, 2417 (2014) (Thomas, J., concurring in judgment) ("the authority to fashion private remedies to enforce federal law belongs to Congress alone" (citation omitted)).

Determining whether a statute explicitly provides a private remedy is relatively straightforward; one looks to the text of the statute to see if it, by its terms, allows a private party to bring suit to enforce it. *See Hallstrom v. Tillamook County*, 493 U.S. 20, 25 (1989). Determining whether a statute implicitly provides a private right of action, however, is more complicated. For an implied private right of action to exist, a statute must manifest Congress's intent to create (1) a private right, and (2) a private remedy. *Sandoval*, 532 U.S. at 286 ("The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." (citing *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 15 (1979)). Only if both these conditions are satisfied may a court hold that an implied private right of action exists under a federal statute.

To determine congressional intent regarding private rights and remedies, courts examine the relevant statute's text and structure. *Id.* at 288. And the question of whether

Congress intended to create a private right of action is "definitively answered in the negative where a statute by its terms grants no private rights to any identifiable class." *Gonzaga*, 536 U.S. at 283-84 (internal quotation marks and citation omitted). Moreover, the Supreme Court "has rarely implied a private right of action under a criminal statute, and where it has done so 'there was at least a statutory basis for inferring that a civil cause of action of some sort lay in favor of someone.'" *Chrysler Corp. v. Brown*, 441 U.S. 281, 316 (1979) (footnote omitted).

Here, nine of Campbell's counts—counts five, seven, nine, ten, eleven, twelve, thirteen, fourteen, and fifteen—are predicated on criminal statutes that neither contain explicit private rights of action nor reveal congressional intent to provide private rights of action. These counts will therefore be dismissed.

Count five is brought under 18 U.S.C. § 1344, which provides for criminal penalties and does not create a private right of action. *Edmonds v. Seavey*, No. 08-cv-5646, 2009 WL 2949757, at *6 (S.D.N.Y. Sept. 15, 2009) ("there is no private cause of action under 18 U.S.C. § 1344" (citation omitted)); *Holmes v. MBNA Am. Bank, N.A.*, No. 5:05-cv-16, 2007 WL 952017, at *1 (W.D.N.C. Mar. 27, 2007) ("18 U.S.C. § 1344 is a criminal statute and provides no private right of action"); *Milgrom v. Burstein*, 374 F. Supp. 2d 523, 529 (E.D. Ky. 2005) (no private right of action exists under 18 U.S.C. § 1344).

Nor do counts seven (18 U.S.C. § 656), nine (18 U.S.C. § 1343), ten (18 U.S.C. § 1341), eleven (18 U.S.C. § 1007), and fifteen (15 U.S.C. § 45) create private rights of action. *See, e.g.*, *U.S. ex rel. Nagy v. Patton*, No. MISC.A. 110267, 2012 WL 1858983, at *2 (E.D. Pa. May 22, 2012) (holding that 18 U.S.C. § 656 does not create a private right of action) (citation omitted); *Addlespurger v. Corbett*, No. 09-cv-1064, 2011 WL 3418975, at *4 (W.D. Pa. Aug. 1, 2011) (same, for

18 U.S.C. §§ 1341 & 1343) (citation omitted); *Phillips v. Deutsche Bank Nat. Trust Co.*, No. 10-cv-5883, 2010 WL 5246032, at *1 (C.D. Cal. Dec. 16, 2010) (same, for 15 U.S.C. § 45); *Park Nat. Bank of Houston v. Kaminetzky*, 976 F. Supp. 571, 576 (S.D. Tex. 1996) (noting that 18 U.S.C. § 1007 does not create a private right of action).

The same is true for counts twelve, brought under 50 U.S.C. § 783, and thirteen, brought under 42 U.S.C. § 2274.[8] No provision of § 783, § 2274, or any related sections creates an express private right of action, and the Court finds no indication of congressional intent to provide a private right of action under those statutes. Both § 783 and § 2274 relate to national security and authorize the United States government to prosecute violations of their provisions; they create no private rights, and certainly no private remedies. Thus, counts twelve and thirteen will be dismissed as well.

Count fourteen will be dismissed for similar reasons. In count fourteen Campbell asserts a claim for obstruction of justice, purportedly under 8 U.S.C. § 1581. That statute does not exist, but there is a § 1581 under Title 18, which is vaguely related to obstruction of justice. Thus, the Court will construe count fourteen as arising under 18 U.S.C. § 1581. But § 1581 likewise contains no private right of action. *See Turner v. Unification Church*, 473 F. Supp. 367, 375 (D.R.I. 1978) (§ 1581 "does not provide, explicitly or implicitly, a civil cause of action"). Moreover, § 1581's application in this case—a civil suit related to a foreclosure—is nonsensical. Section 1581 provides criminal penalties for obstructing enforcement of antislavery and

---

[8] Section 783 of Title 50 is part of the Internal Security Act of 1950 and makes it a crime for an employee of the United States government to knowingly communicate classified information to an agent of a foreign government or for such an agent to knowingly receive that classified information. Similarly, 42 U.S.C. § 2274 is part of the Atomic Energy Act and makes it a crime to communicate, transmit, or disclose data concerning atomic weapons (as defined in § 2014(y)) with the intent to injure the United States.

antipeonage laws.  Specifically, § 1581 makes it a crime to hold or return any person to a condition of peonage, or to arrest any person with the intent of placing him in or returning him to a condition of peonage.  Thus, even if § 1581 provided a private right of action, Campbell has in no way stated a valid claim under that section.  Count fourteen will therefore be dismissed.

Thus, counts five, seven, nine, ten, eleven, twelve, thirteen, fourteen, and fifteen will be dismissed.

### B.    Count Eighth

M&T Bank argues that count eighth, which is brought under 18 U.S.C. § 1005, likewise creates no private right of action and should therefore be dismissed as well.  M&T Bank is partially correct; § 1005 makes it a crime for certain bank employees to make false bank entries, reports, or transactions, and creates no private right of action.  But 12 U.S.C. § 503 expressly creates a private right of action against bank directors or officers for violations of 18 U.S.C. § 1005.  *See White v. Keely*, 814 F.3d 883, 888 (7th Cir. 2016) ("Section 503 of the Federal Reserve Act, meanwhile, creates a private cause of action for any person who has 'sustained [damages] in consequence' of a violation of Section 1005.")

Nevertheless, even if the Court construes count eighth as based on 12 U.S.C. § 503,[9] that claim fails because it is barred by the statute of limitations.  The Federal Rules of Civil Procedure technically "require a defendant to plead an affirmative defense, like a statute of limitations defense, in the answer, not in a motion to dismiss."  *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citation omitted).  But in this circuit defendants may raise statute of

---

[9] And if the Court overlooks the fact that § 503 does not authorize suit against M&T Bank itself; § 503 allows suit to be brought against its directors or officers only.

limitations defenses in a Rule 12(b)(6) motion "only if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Id.* (internal quotation marks and citation omitted).  If the statute of limitations bar is not apparent on the face of the complaint, however, then it may not afford the basis for dismissal of the complaint under Rule 12(b)(6).  *Id* (citation omitted).  Here, dismissal of count eighth on the basis of the statute of limitations is appropriate under that standard.

The Court is unable to find a federal statute of limitations for actions under 12 U.S.C. § 503 and Pennsylvania's relevant statute of limitations therefore applies.  *See Bd. of Regents v. Tomanio*, 446 U.S. 478, 485 (1980) (state limitation period applied because "there was no specifically stated or otherwise relevant federal statute of limitations for the federal substantive claim" (citation omitted)).  Under Pennsylvania law, claims for fraud and claims based "upon a statute for a civil penalty" must be brought within two years, 42 Pa. Cons. Stat. §§ 5524(5), (7), and claims based on a written contract must be brought within four years, 42 Pa. Cons. Stat. § 5525(a)(8).  Campbell bases her eighth count on the statement and lien release she received from M&T Bank's collections department; the substance of this claim appears to be that M&T Bank fraudulently debited $40,000 from a nonexistent bank account.  (*See* ECF No. 1-3 at ¶¶ 8, 120-21.)

But Campbell admits she discovered this debit when she received the statement and lien release from M&T Bank in 2009.  (*Id.* ¶¶ 8, 12.)  Thus, even if the Court assumes that count eighth states a claim, and further gives Campbell the benefit of the doubt that this claim is based on a written contract and is not one to which a shorter limitations period applies, and assumes also that the applicable limitations period was tolled until she received the statement and lien

release in 2009, she still missed the deadline to file suit on this claim. The statement and lien release and related documents Campbell attached to her complaint (ECF No. 1-3 at 75-80) are dated February 2009. Even if the Court ignored the February 2009 dates and construed Campbell's complaint as alleging that she received the statement and lien release in December 2009, the largest applicable limitation period would give her four years—so until December 2013—to file suit on this claim. Campbell first filed this case in state court in August 2015, thus missing the deadline by at least 21 months.

Thus, the Court will dismiss count eighth.

### C.     Counts One and Two

Similar to count eighth, the Court will dismiss counts one and two because they are timebarred. Counts one and two arise under state law and are claims for fraud and breach of fiduciary duty, respectively. As M&T Bank points out, in Pennsylvania the statutes of limitations for claims of fraud and breach of fiduciary duty are two years. 42 Pa. Cons. Stat. § 5524(7); *see also Schmidt*, 770 F.3d at 250 (noting Pennsylvania's two-year statute of limitations for claims of breach of fiduciary duty). Because counts one and two are based on conduct that Campbell discovered—at the latest—in August 2012, those claims are timebarred as well.

Counts one and two are based in large part on the escrow settlement statement detailing the property's sale and the sale's division of funds. (*See* ECF No. 1-3 ¶¶ 72-92.) And Campbell admits she obtained that escrow settlement statement in August 2012. (ECF No. 1-3 ¶ 3.) Although Campbell relies on other conduct in support of counts one and two—like M&T Bank's refusal to accept her loan payments—she concedes all that conduct occurred in the early to mid 2000s. (*See, e.g., id.* ¶ 58-59.) Thus, even if the Court assumes the applicable statute of

limitations periods were tolled until Campbell received the escrow settlement statement, the latest her claims for fraud and breach of fiduciary duty accrued was August 2012.

Thus, under Pennsylvania's two-year statutes of limitations for fraud and breach-of-fiduciary-duty claims, Campbell had until August 2014 to file these claims. But she first filed this case in state court in August 2015, missing that deadline by a year. As such, the Court will dismiss counts one and two.

### D. Count Three

Count three—which alleges a claim of material breach of contract—will likewise be dismissed because it is barred also by the statute of limitations.[10] Campbell alleges the following in support of her breach-of-contract claim: (1) "[n]o substitute trustee appeared in public record 21 days before the sale (which was not public, but a private, nonadvertised sale between parties- in and of itself a violation of foreclosure law)"; (2) "[n]o notice of sale or any other documents were sent to Plaintiff"; (3) "[n]o notice of default and time to cure was ever sent to Plaintiff, a material breech [sic] of the Trust agreement and Federal law"; and (4) "[t]he lack of notice of default and time to cure is a material prerequisite to foreclosure, which is a breach, and renders the foreclosure void." (ECF No. 1-3 ¶ 94-96.)

Yet all these events occurred more than a decade before Campbell initially filed this case in state court. The foreclosure action was filed on September 23, 2002 (*id.* at 54), and completed

---

[10] The Court notes also that the relief Campbell requests on this count—"a declaratory judgment from the Court, certifying the foreclosure is void" (ECF No. 1-3 ¶ 97)—appears to be an collateral attack of a state judgment, which is impermissible under the *Rooker-Feldman* doctrine. *See, e.g., Marks v. Stinson*, 19 F.3d 873, 885 n.11 (3d Cir. 1994). Furthermore, Count three appears to be predicated on a breach of the trust agreement, yet Campbell never states that she was a party to this trust agreement or explains what its substantive provisions were. Nevertheless, for purposes of this motion to dismiss the Court will assume that both Campbell and M&T Bank were parties to this trust agreement.

on May 8, 2003 (*id.* at 61). Obviously, her default occurred before the foreclosure action. (*See id.* ¶ 20.) And the property's sale occurred on October 18, 2004. (*Id.* ¶ 71; *id.* at 45.) As noted above, under Pennsylvania law claims based on a written contract must be brought within four years. 42 Pa. Cons. Stat. § 5525(a)(8). No facts in Campbell's complaint would toll this statute of limitations; Campbell was aware of all these facts at the time the foreclosure and the property's sale took place. Thus, her claims accrued at the time the conduct occurred and she therefore had four years under Pennsylvania law to bring a breach-of-contract claim. She failed to do so, and any breach-of-contract claim based on the facts alleged is thus timebarred.

There is one allegation in support of Campbell's breach-of-contract claim that merits additional discussion. She states that "[t]he steps taken by Defendant in its participation in foreclosure via the kickback/quid pro quo agreement were in violation of the trust agreement and federal law." (*Id.* ¶ 94.) Campbell makes much of the fact that she was unable to obtain the escrow settlement statement regarding the alleged "kickback agreement" until August 2012. (*Id.* ¶ 3.) But this fact is of no consequence because it was not the statement that alerted her to the alleged agreement. Campbell concedes that she "discovered this secret kickback/quid pro quo agreement almost two years after the loss of her home and its subsequent sale by M&T Bank." (*Id.* ¶ 6.) As such, any breach-of-contract claim based on the so-called kickback agreement accrued—at the latest—two years after October 18, 2004 (*see id.* at 45), and is thus timebarred as well.

Additionally, equitable tolling does not save Campbell's claims. Campbell conclusorily states that "[a]ny applicable statutes of limitations have been tolled by the Defendants' [sic] continuing, knowing, and active concealment of the facts" and that "[d]espite exercising

reasonable diligence, Plaintiff could not have discovered, did not discover, and was prevented from discovering, the wrongdoing complained of herein." (*Id.* ¶ 2.) But from the facts Campbell alleges, and drawing all reasonable inferences in her favor, there is no indication any of the statutes of limitations were tolled. Equitable tolling is an extraordinary remedy which is extended only sparingly. *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990). It applies when a plaintiff has "been prevented from filing in a timely manner due to sufficiently inequitable circumstances." *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 240 (3d Cir. 1999) (citation omitted). Specifically, equitable tolling applies (1) if the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) if the plaintiff in some extraordinary way has been prevented from asserting his rights; or (3) if the plaintiff has timely asserted his or her rights mistakenly in the wrong forum. *Hedges v. United States*, 404 F.3d 744, 751 (3d Cir. 2005) (citation omitted). In any case, a plaintiff must exercise due diligence in preserving his claim. *Id.* (citation omitted).

Campbell's complaint illustrates why equitable tolling is inapplicable here. Even if the Court assumes M&T Bank somehow misled Campbell by either not providing the escrow settlement statement earlier or refusing to give her any additional information, Campbell admits she became aware of the alleged "secret kickback/quid pro quo agreement almost two years after the loss of her home and its subsequent sale by M&T Bank." (ECF No. 1-3 ¶ 6.) Thus, M&T Bank's alleged concealment did not actually conceal the so-called kickback agreement from Campbell. She knew of the agreement by October 2006—more than nine years before she initially filed this case in state court. (*See id.* at 45.) Equitable tolling is therefore inapplicable.

And even if the Court assumed otherwise, dismissal of Campbell's breach-of-contract claim is still appropriate because it fails to state a claim. Although pro se complaints, "however inartfully pleaded," are held to "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), they must still contain "sufficient factual matter; accepted as true; to state a claim to relief that is plausible on this face." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted); *see also Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015) ("we nonetheless review the [pro se] pleading to ensure that it has sufficient factual matter; accepted as true; to state a claim to relief that is plausible on this face" (internal quotation marks and citation omitted)). Campbell's conclusory allegation that "[t]he steps taken by Defendant in its participation in foreclosure via the kickback/quid pro quo agreement were in violation of the trust agreement" fails to meet this standard. (ECF No. 1-3 ¶ 94.) Campbell does not explain what provision of the trust agreement was violated by the alleged kickback agreement, or how. Stated simply, this allegation does not present sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Sheridan*, 609 F.3d at 262 n.27 (citation omitted).

Thus, count three will be dismissed.

### E.     Count Four

In count four, Campbell asserts a claim under the False Claims Act (FCA), purportedly under 31 U.S.C. § 3731(b).[11] The FCA allows a private person to file a civil case on behalf of the United States government against any person who knowingly makes a false or fraudulent claim

---

[11] As M&T Bank notes, § 3731(b) provides the statute of limitations for FCA claims. Section 3730(b) provides the actual private right of action. The Court will construe count four as arising under § 3730(b).

for payment or approval to the United States government. 31 U.S.C. §§ 3729-30. An FCA case brought by a private person must be brought in the name of the United States government, "which, because it 'has the primary stake in the suit, . . . is empowered to take it over and prosecute it itself.'" *U.S. ex rel. Banks v. Aramark Corr. Servs.*, No. 06-cv-1424, 2008 WL 3833459, at *4 (W.D. Pa. Aug. 15, 2008) (quoting *U.S. ex rel. Lu v. Ou*, 368 F.3d 773, 774 (7th Cir. 2004)).

Campbell's FCA claim suffers from numerous procedural defects; she did not bring her claim in the name of the United States as required by § 3730(b) and did not file her complaint under seal or withhold service as required by § 3730(b)(2). Moreover, she filed this claim pro se. Although the FCA does not speak to whether a private person can bring a FCA claim pro se, the United States Court of Appeals for the Third Circuit has answered this question in the negative. *Gunn v. Credit Suisse Grp. AG*, 610 F. App'x 155, 157 (3d Cir. 2015); *see also Banks*, 2008 WL 3833459, at *4-5 (elaborating on the rationale for bar on pro se FCA claims).

### F.      Count Six

This leaves count six, in which Campbell asserts a claim for "RICO VIOLATION INVOLVING BANK FRAUD (18 U.S.C. § 1963)".[12]   (ECF No. 1-3 at 29.)   To plead a RICO violation, a plaintiff must allege four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004) (citing *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985)), *abrogated in part on other grounds by Twombly*, 550 U.S. at 557. The pattern of racketeering activity requires at least two acts of

---

[12] Section 1963 provides for criminal penalties for violations of § 1962 and does not provide a private right of action. Section 1964(c), however, allows "[a]ny person injured in his business or property by reason of a violation of section 1962" to sue for damages. Thus, the Court will construe count six as arising under § 1964(c).

racketeering—so-called predicate acts—within a period of ten years.  18 U.S.C. § 1961(5); *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 363 (3d Cir. 2010).

The predicate acts that qualify as racketeering activity for purposes of RICO are numerous, and defined in § 1961(1).  Three of Campbell's claims and their underlying conduct could qualify as predicate acts under § 1961(1), namely her claims of bank fraud (18 U.S.C. § 1344), mail fraud (18 U.S.C. § 1341), and wire fraud (18 U.S.C. § 1343).  Notwithstanding the dismissal of those counts on other grounds, they could still satisfy the pattern of racketeering activity requirement of her RICO claim.

But RICO claims are subject to a four-year statute of limitations.  *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 152-56 (1987).  And most of the conduct Campbell relies on in support for her RICO claim—M&T Bank's debit from Campbell's bank account, the alleged fraudulent mailings between M&T Bank and Colony Surf, and M&T's alleged collusion with Colony Surf—occurred before at least 2010.  (*See, e.g.*, ECF No. 1-3 ¶¶ 6, 8, 12, 55-56.)  And Campbell was aware of all that conduct before at least 2010 (*id.*), meaning her RICO claim based on that conduct accrued at that time.  Thus, at the latest she had until sometime in 2014 to assert a RICO claim based on those facts.  Campbell first filed this case in state court in August 2015, missing the limitation period for her RICO claim by at least eight months.

The lone allegation in support of Campbell's RICO claim which may not be timebarred is that M&T Bank "collu[ded] with NY Reserve to obstruct Plaintiff from obtaining settlement statement."  (*Id.* ¶ 117.)  The reason that allegation may not be timebarred is because Campbell never provides the date for this alleged collusion.  Nevertheless, this allegation does not save Campbell's RICO claim; without more detail, there is no indication that M&T Bank's alleged

collusion with the Federal Reserve Bank of New York qualifies as a predicate act under § 1961(1). Furthermore, when fraud-based offenses are the alleged predicate acts for a RICO claim, the allegations underlying those offenses must comply with Federal Rule of Civil Procedure 9(b)'s heightened pleading standard for fraud claims. *Saporito v. Combustion Eng'g Inc.*, 843 F.2d 666, 673 (3d Cir. 1988), *vacated on other grounds*, 489 U.S. 1049 (1989). This requirement applies even to pleadings drafted by pro se parties. *See McNeil v. United States*, 508 U.S. 106, 113 (1993). Campbell's bare assertion that M&T Bank colluded with the Federal Reserve Bank of New York, without more detail, therefore fails to state a RICO claim.

Thus, count six will be dismissed.

### G. Leave to Amend & M&T Bank's Other Arguments

A district court may "properly deny leave to amend where the amendment would not withstand a motion to dismiss." *Centifanti v. Nix*, 865 F. 2d 1422, 1431 (3d Cir. 1989). As discussed above, counts five, seven, nine, ten, eleven, twelve, thirteen, fourteen, and fifteen of Campbell's complaint will be dismissed because the statutes upon which those claims are based do not provide private rights of action. The Court finds that any amendment of those claims would therefore be futile, and leave to amend those counts is denied.

Leave to amend counts one, two, three, and eighth is denied as well. Those counts are timebarred, and the Court finds that any amendment would be futile. As for count four—the FCA claim—Campbell may not assert that claim pro se. Count four also suffers from numerous other defects, some of which the Court has already noted. But it may be that Campbell, with the assistance of counsel, can remedy those defects. Thus, the dismissal of count four is without prejudice.

This leaves count six, Campbell's RICO claim. The allegations supporting that claim are so sparse that the Court cannot determine whether amendment would be futile. Nor can the Court determine, based on the facts alleged, if the *Rooker-Feldman* doctrine bars that claim or if it requires joinder of an indispensable party pursuant to Rule 19(b). Thus, leave to amend count six will be granted.

Based on the foregoing, the Court need not and therefore will not reach M&T Bank's arguments regarding the *Rooker-Feldman* doctrine, res judicata, collateral estoppel, or failure to join an indispensable party.

## IV. Conclusion

M&T Bank's motion to dismiss is **GRANTED.** A corresponding order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DEBRA HEVERLY CAMPBELL,** | ) | **Case No. 3:16-cv-118** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE KIM R. GIBSON** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **M&T BANK,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

**NOW**, this 22nd day of March 2017, upon consideration of M&T Bank's motion to dismiss (ECF No. 3) and for the reasons set forth in the memorandum opinion accompanying this order, it is **HEREBY ORDERED** that M&T Bank's motion to dismiss (ECF No. 3) is **GRANTED as follows:**

1. Plaintiff Debra Heverly Campbell's complaint (ECF No. 1-3) is dismissed.

    a. With respect to counts one, two, three, five, seven, eighth, nine, ten, eleven, twelve, thirteen, fourteen, and fifteen, this dismissal is with prejudice.

    b. With respect to count four, this dismissal is without prejudice.

2. With respect to count six, Campbell is granted leave to file **on or before April 13, 2017**, if at all, an amended complaint as to count six only.

**BY THE COURT:**

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**