IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DEBRA HEVERLY CAMPBELL, and ) Case No. 3:16-cv-118
POHAKU FUNDING AND INVESTMENT )
CORPORATION, *it its capacity as Trustee,* ) JUDGE KIM R. GIBSON
*for the* 2895-201 KALAKAUA LAND )
TRUST and POHAIKEALOHA TRUST, )
DEBRA HEVERLY CAMPBELL *as president* )
*of* POHAKU FUNDING AND )
INVESTMENT CORPORATION, and )
DEBRA HEVERLY CAMPBELL AND JADE )
MAKANA HEVERLEY-CAMPBELL *as* )
*beneficiaries of* POHAIKEALOHA TRUST, )
 )
 Plaintiffs, )
 )
 v. )
 )
M&T BANK, COLONY SURF LTD., )
DAVID SPRIEGEL, GERALYN BONILLA, )
PERI SARAC-FLIHAN, WILLIAM E. )
DENISON, R. STEVENS GILLEY, TERRY )
MULLIN, AND MURIEL PAYNE, )
 )
 Defendants. )

## MEMORANDUM OPINION[1]

### I.   Introduction

Pending before this Court are four separate motions (*see* ECF Nos. 9, 14, 16, 30), filed by

four different groups of Defendants, all asking this Court to dismiss Plaintiff's First Amended

Complaint (ECF No. 8) in its entirety. These motions have been fully briefed (*see* ECF Nos. 9, 11,

15, 17, 19, 20, 29, 31) and are ripe for disposition.

---

[1] Although Plaintiff's Amended Complaint refers to the fifth Defendant as "Peri Sarac-Fliman" (ECF No. 8
at 1, 3), after being informed that this Defendant's name is "Peri Sarac-Flihan" (ECF No. 14 at 1), Plaintiff
began to refer to this Defendant as "Peri Sarac-Flihan." (ECF No. 19.) Therefore, the Court will, likewise,
use what appears to be the proper spelling and will refer to the fifth Defendant as "Peri Sarac-Flihan."

This case arises from Plaintiff Debra Heverly Campbell's ("Plaintiff" or "Campbell") contention that the various Defendants colluded to divest her of a property she had been subleasing at the Colony Surf Apartments in Honolulu, Hawaii through a "complex conspiracy" of illegal and fraudulent racketeering activities. (ECF No. 8 ¶ 21.) Campbell has represented herself throughout this case.[2]

This Court dismissed all fifteen counts of Campbell's original Complaint—all of which were made against only M&T Bank, but granted Campbell leave to amend her claim of a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). *See Campbell v. M&T Bank*, Case No. 3:16-cv-118, 2017 WL 1091939 (W.D. Pa. Mar. 22, 2017) (Gibson, J.). In her three-count Amended Complaint, Campbell added eight additional Defendants. (*See* ECF No. 8.) All but one

---

[2] Unlike the original Complaint in which only "Debra Heverly Campbell" is listed as a plaintiff (*see* ECF No. 1; ECF No. 1-3), the caption to the Amended Complaint includes a number of other purported plaintiffs. (*See* ECF No. 8.) Despite this multi-plaintiff caption, the body of the Amended Complaint itself repeatedly states that the action is brought by only Debra Heverly Campbell, the Amended Complaint and all of Plaintiff's briefs use the singular term "Plaintiff" and refer only to Debra Heverly Campbell as that Plaintiff, and the "Parties, Jurisdiction and Venue" section of the Amended Complaint identifies only Debra Heverly Campbell as a plaintiff to this action. Therefore, the Court construes the Amended Complaint to be brought by only Debra Heverly Campbell. This conclusion that the Amended Complaint was brought by only Campbell is of little practical consequence for resolving the present motions because this interpretation of the Amended Complaint does not, in any way, affect the Court's reasoning or disposition of the four pending motions to dismiss, our decision in setting aside the entry of default against Muriel Payne, or our dismissal of the claims against Muriel Payne. However, the Court specifically articulates that Debra Heverly Campbell is the only Plaintiff in the instant matter for two reasons. First, the Court hopes to clarify the use of the singular term "Plaintiff" and references to only "Campbell" throughout this Memorandum Opinion. Second, Campbell is a *pro se* plaintiff who has not been admitted practice law before any state or federal court. While Campbell may represent herself before this Court, she cannot represent another person or legal entity before this Court—which, were this Court to construe the Amended Complaint to feature multiple plaintiffs, she would be purporting to do. Beyond the violation of court rules, Campbell's representation of other persons or legal entities before this Court would constitute a crime under the laws of the Commonwealth of Pennsylvania. *See* 42 Pa. Stat. and Cons. Stat. § 2524 (providing civil and criminal penalties for the unauthorized practice of law). Thus, given the singular language of the Amended Complaint and Plaintiff's various briefs and this Court's assumption that Campbell did not intend to violate Pennsylvania law through the unauthorized practice of law, the Court construes Campbell's Amended Complaint to be brought only on her own behalf.

of those Defendants have moved—in four separate motions—to dismiss the Amended Complaint pursuant to slightly varying combinations of Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), 12(b)(5), and 12(b)(6). The final Defendant, Muriel Payne, did not respond to the Amended Complaint, and the Clerk entered default against her on October 19, 2017. (ECF No. 33.)

For the reasons that follow, this Court will **GRANT** all four motions. (ECF Nos. 9, 14, 16, 30.) Moreover, the Court will set aside the Clerk's entry of default against Defendant Muriel Payne and dismiss all claims against her.

## II. Procedural History

On August 10, 2015, Campbell—representing herself—filed a Praceipe for Writ of Summons in the Blair County Court of Common Pleas; Campbell never filed a Complaint in this first case. (ECF No. 1.) On April 11, 2016, Campbell filed a second case in the Blair County Court of Common Pleas with a Complaint naming only M&T Bank as a defendant. (*Id.*) These two state cases were consolidated. (*Id.*) M&T Bank then removed the consolidated case to this Court on May 26, 2016 (*see id.*) and, shortly thereafter, filed its first Motion to Dismiss and accompanying brief on June 2, 2016. (ECF Nos. 3, 4.)

On March 22, 2017, this Court issued a Memorandum Order and Opinion dismissing all fifteen counts[3] of Campbell's first Complaint for lack of a private cause of action, passage of the

---

[3] Campbell's complaint contained 15 counts: (1) fraud; (2) breach of fiduciary duty; (3) material breach of contract; (4) a violation of the False Claims Act under 31 U.S.C. § 3731(b); (5) bank fraud under 18 U.S.C. § 1344; (6) a RICO violation involving bank fraud under 18 U.S.C. § 1963; (7) theft, embezzlement, or misapplication by bank officer or employee under 18 U.S.C. § 656; (8) fraud concerning bank entries, reports, and transactions under 18 U.S.C. § 1005; (9) wire fraud affecting a financial institution under 18 U.S.C. § 1343; (10) mail fraud affecting a financial institution under 18 U.S.C. § 1341; (11) fraud concerning FDIC transactions under 18 U.S.C. § 1007; (12) disclosure of classified information under 50 U.S.C. § 783; (13) communication of restricted data under 42 U.S.C. § 2274; (14) obstruction of justice under 18 U.S.C. §

period provided for by the relevant statutes of limitations, and failure to state a claim upon which relief can be granted. *See generally Campbell*, 2017 WL 1091939. Thirteen of the counts of the Complaint were dismissed with prejudice because it would futile to amend those claims. *Id.* at *12. However, one claim for an alleged violation of the False Claims Act, 31 U.S.C. § 3731(b) (Count Four) was dismissed without prejudice because, although she could not assert Count Four *pro se*, Campbell could, perhaps, remedy the defects of that claims with the assistance of counsel.[4] *See Campbell*, 2017 WL 1091939, at *11. And, Campbell was granted leave to amend her RICO claim (Count Six) because the allegations of the Complaint were too sparse to determine whether amendment would be futile. *Id.*

On April 20, 2017, Campbell filed her Amended Complaint. (ECF No. 8.)[5] The Amended Complaint is organized into three counts: (1) a violation of RICO; (2) financial institution fraud in violation of 18 U.S.C. § 1344; and (3) "interference" by the New York Reserve. (*See id.*) Campbell brought these three claims against M&T Bank, Colony Surf Ltd. ("Colony Surf"), David Spriegel ("Spriegel"), Geralyn Bonilla ("Bonilla"), Peri Sarac-Flihan ("Sarac-Flihan"), William E. Denison ("Denison"), R. Stevens Gilley ("Gilley), Terry Mullin ("Mullin"), and Muriel Payne ("Payne"). (*Id.*)

---

1581; and (15) unfair or deceptive acts or practices by state chartered banks under 15 U.S.C. § 45. (*See* ECF No. 1-3.)

[4] Campbell never retained counsel and did not include an amended Federal Claims Act claim within the Amended Complaint. (*See* ECF No. 8.)

[5] The Court notes that, despite the Court granting an extension of the deadline for Campbell to file her Amended Complaint, Campbell filed her Amended Complaint one day after the deadline of April 19, 2017. (*See* ECF Nos. 7, 8.) Nevertheless, in the interest of fairness to the *pro se* Plaintiff, the Court will excuse this slightly untimely filing, especially because Defendants, despite acknowledging the missed deadline (*see* ECF No. 9 at 8), have not asked the Court to dismiss the Amended Complaint on this basis.

-4-

In response, M&T Bank filed its Motion to Dismiss Plaintiff's First Amended Complaint and accompanying Memorandum of Law on May 4, 2017 (ECF No. 9); Spriegel, Bonilla, and Sarac-Flihan filed their Motion to Dismiss Plaintiff's First Amended Complaint and accompanying Memorandum on June 16, 2017 (ECF Nos. 14, 15); Colony Surf, Denison, and Gilley filed their Motion to Dismiss Plaintiff's First Amended Complaint and accompanying Memorandum on June 20, 2017 (ECF Nos. 16, 17); and, lastly, Mullin filed her Motion to Dismiss Plaintiff's First Amended Complaint and accompanying Memorandum on September 11, 2017 and September 8, 2017 respectively (ECF Nos. 29, 30.)[6] Campbell filed a response to all four of these motions and briefs. (ECF Nos. 11, 19, 20, 31.)

Most recently, Campbell filed a Request for Entry of Default & Default Judgment against Payne on October 11, 2017 on the basis that Payne had never responded to the Amended Complaint. (ECF No. 32.) The Clerk of Court entered default against Payne on October 19, 2017. (ECF No. 33.)

## III.  Factual Allegations Set Forth in the Amended Complaint

The following facts, which the Court accepts as true for the purposes of deciding Defendants' motions to dismiss, are alleged in Plaintiff's Amended Complaint or included in the exhibits attached thereto. (*See* ECF No. 8.)

On April 14, 2000, Pohaku Funding and Investment Corporation, trustee of the 2895-201 Kalakaua Land Trust ("the Trust") obtained a loan from Keystone Financial Bank, N.A. ("Keystone") in the amount of $400,000 ("the Loan"). (*Id.* ¶ 27; ECF No. 1-2, Ex. A.) M&T Bank

---

[6] Mullin's Motion to Dismiss was filed *after* her Memorandum in Support thereof due to a now-corrected CM/ECF filing error. (*See* ECF No. 28.)

is the successor of Keystone due to a merger. (ECF No. 8 ¶ 28.) The note accompanying the Loan was executed by Pohaku Funding Investment Corporation as trustee and was guaranteed by Plaintiff. (ECF No. 1-2, Ex. A.) Campbell is a beneficiary of the Trust. (ECF No. 8 ¶ 84.) The Loan's purpose was to finance a sublease on real property located at 2895 Kalakaua Avenue, #201, Honolulu, HI ("the Property") at Colony Surf Apartments, on which M&T Bank held a mortgage. (*Id.* ¶ 27.)

Although Campbell remained current on the Loan with M&T Bank, she defaulted on her monthly maintenance fees to Colony Surf. (*Id.* ¶ 55.) Accordingly, Colony Surf issued a default notice for three months of monthly maintenance fees plus legal fees. (*Id.*) Campbell did not receive notice of this default until shortly before Thanksgiving in November of 2001. (*Id.* ¶¶ 55-56.)

Colony Surf initiated Hawaii state court proceedings to cancel the sublease for the Property. (*Id.* ¶ 37; ECF No. 8-11, Ex. 11.) At the cancellation proceeding before the Circuit Court for the First Circuit of Hawaii, the Trust was represented by counsel. (ECF No. 8-1, Ex. 1; ECF No. 8-11, Ex. 11.) On March 27, 2003, the Hawaii state court granted Colony Surf's request and ordered that the Trust's sublease be cancelled. (ECF No. 8-1, Ex. 1.) According to the Hawaii state court's order, the Trust and "all persons claiming an interest in the leasehold property" were forever barred and foreclosed of and from any and all right, title, and interest and claims at law or equity in and to said Property. (*Id.*) Possession of the Property was awarded to Colony Surf. (*Id.*)

Following this cancellation of the sublease, Colony Surf transferred ownership of the Property to M&T Bank. (ECF No. 8-11, Ex. 11.) As part of this transfer, M&T Bank and Colony

Surf agreed to various terms regarding the disposition of potential funds from any subsequent sale of the Property. (*Id.*) On October 18, 2004, M&T Bank resold the Property to a third party for $615,000 and reimbursed Colony Surf for its costs related to the assessments and action to terminate the sublease. (ECF No. 8-3, Ex. 3.)

Over four months later, on February 24, 2005, Campbell submitted a Freedom of Information Act, 5 U.S.C. § 552 ("FOIA") request to the Federal Reserve. (ECF No. 8-4, Ex. 4.) On March 23, 2005, the Federal Reserve sent a letter to Campbell acknowledging her position that "M&T engaged in deceptive practices by conspiring with [Campbell's] cooperative's management to initiate foreclosure proceedings and to keep the equity gained on the sale of [her] apartment." (*Id.*) The Federal Reserve also provided Campbell with an itemization of the balance of the Loan at the time of the sale of the Property being $602,796.02. (*Id.*) Campbell did not receive a copy of the Seller's Closing Statement from the 2004 sale of the Property until August 2012. (ECF No. 8 ¶ 3.)

Over 10 years and 9 months passed between the sale of the Property and Campbell's filing of a Praecipe for Writ of Summons in the Blair County Court of Common Pleas on August 10, 2015. Over 10 years and 4 months passed between Campbell's FOIA request to the Federal Reserve and Federal Reserve's response thereto and Campbell's filing of her Praecipe for Writ of Summons.

**IV. Discussion**

All Defendants except for Payne have moved to dismiss the entirety of the Amended Complaint under a number of theories. In deciding the four pending motions to dismiss, the Court offers an opinion only as to this Court's lack of personal jurisdiction over eight Defendants

pursuant to Rule 12(b)(2) and Campbell's failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). Additionally, prior to discussing these two bases for dismissal, this Court sets aside the Clerk's entry of default against Payne and—for the same reasons this Court grants the motions to dismiss filed by Colony Surf, Spriegel, Bonilla, Sarac-Flihan, Denison, Gilley, and Mullin—dismisses all claims against Payne.

## A. The Court Sets Aside the Clerk's Entry of Default Against Payne

### 1. Standard for Setting Aside an Entry of Default under Rule 55(c)

Under Federal Rule of Civil Procedure 55(c), "[t]he court may set aside an entry of default for good cause . . . ." Fed. R. Civ. P. 55(c). The application of Rule 55(c) to set aside default is a two-step process. *See United States ex rel. Salvatore v. Fleming*, Civil Action No. 11-1157, 2014 WL 7069509, at *2 (W.D. Pa. Dec. 12, 2014).

First, a court must decide whether service of process was sufficient to confer jurisdiction upon the court. *See Smith v. Rebstock*, 477 F. App'x. 884, 885 (3d Cir. 2012); *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1303-04 (3d Cir. 1995) (affirming the denial of entry of default where service was not proper); *Thompson v. Mattleman, Greenberg, Shmerelson, Weinroth & Miller*, No. CIV. A. 93-2290, 1995 WL 321898, at *4 (E.D. Pa. May 26, 1995) ("Before a default can be entered, the court must have jurisdiction over the party against whom the judgment is sought, which also means that he must have been effectively served with process.").

Second, courts in the Third Circuit use a three-factor analysis to weigh the equities of setting aside default: (1) prejudice to the plaintiff if default is set aside, (2) whether the defendant appears to have a meritorious defense, and (3) whether defendant's delay is due to culpable conduct. *World Entm't Inc. v. Brown*, 487 F. App'x 758, 761 (3d Cir. 2012); *Chamberlain v. Giampapa*,

210 F.3d 154, 164 (3d Cir. 2000); *$55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984); *see Int'l Broth. of Elec. Workers, Local Union No. 313 v. Skaggs*, 130 F.R.D. 526, 529 n.1 (D. Del. 1990) (holding that the Third Circuit applies the same standard for default in appearance as for default judgment).

The decision to set aside default is left to the discretion of the court. *See Damboch v. United States*, 211 F. App'x 105, 109 (3d Cir. 2006); *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)); *Salvatore*, 2014 WL 7069509, at *2; *Scholz Design, Inc. v. Costa*, No. 2:10-cv-1640, 2011 WL 635277, at *3 (W.D. Pa. Feb. 11, 2011). However, courts must be mindful of the Third Circuit's preference for allowing claims to be decided on their merits and, thus, should set aside default liberally. *See Medunic v. Lederer*, 533 F.2d 891, 894 (3d Cir. 1976); *Hritz*, 732 F.2d at 1181; *Mark IV Transp. & Logistics, Inc. v. Bowman Sales and Equip. Co.*, Civil Action No. 16-cv-01310, 2016 WL 4940314, at *1 (D.N.J. Sept. 14, 2016); *Salvatore*, 2014 WL 7069509, at *2; *Thompson*, 1995 WL 321898, at *3.

### 2. Application of the Rule 55(c) Standard to Payne

Under the first step of the two-step Rule 55(c) analysis, the Court observes that there are serious questions as to whether Payne was properly served. Federal Rule of Civil Procedure 4 permits service to be made upon an individual or organizational party by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." *See* Fed. R. Civ. P. 4(e)(1); Fed. R. Civ. P. 4(h)(1)(A). Therefore, the issue before this Court regarding the attempted service of Payne is whether sending a copy of the summons and complaint by U.S. Certified Mail is a proper method

of service under Pennsylvania law (where this Court is located) or New York law (where service was allegedly made).

The New York Civil Practice Law and Rules do not allow for service of process by U.S. Certified Mail upon individual or corporate defendants. *See* N.Y.C.P.L.R. 312-a(a), (f); *Soni v. Holtzer*, 255 F. App'x 614, 617 (3d Cir. 2007). However, the Pennsylvania Rules of Civil Procedure permit service of process upon an individual or corporation "outside the Commonwealth . . . by mail in the manner provided by Rule 403." *See* Pa. R. Civ. P. 404(2). Pennsylvania Rule of Civil Procedure 403 provides that a copy "of the original process shall be mailed to the defendant by any form of mail requiring a receipt signed by the defendant or his authorized agent." Pa. R. Civ. P. 403. Thus, as service of process upon defendants by certified mail is permitted under Pennsylvania law, whether or not Plaintiff properly complied with such service is the next area of inquiry.

Here, Campbell sought to effectuate service on Payne via U.S. Certified Mail sent to "Muriel Payne, c/o Federal Reserve Bank of New York, 33 Liberty St., New York, NY 10045." (ECF No. 32-2 at 2.) The return receipt filed with the Court, which must be "signed by the defendant or his authorized agent" under Pennsylvania Rule of Civil Procedure 403, *see* Pa. R. Civ. P. 403, features a marginally legible signature that resembles the letters "C.S." and bears little resemblance to "M.P." or other letters common to the name "Muriel Payne." (*Id.*) The portion of the return receipt where the signee should write his or her "printed name" is left blank. Thus, the fact that service of process was mailed to an address associated with the Federal Reserve Bank—rather than Payne's residence—and that the signature line on the return receipt appears

to be signed by someone other than Muriel Payne[7] raises serious questions as to whether the Amended Complaint was properly served on Payne.

Even beyond the likelihood that the Amended Complaint was not properly served on Payne, the second step of the Rule 55(c) analysis and its three-factor test persuade this Court that the entry of default against Payne should be set aside. First,[8] if default is set aside, the only prejudice Campbell would face is being required to show that she has pleaded a cognizable claim against Payne. This prejudice, if any, is particularly low because Campbell has made similar allegations against eight other Defendants in similar (or even identical) positions to Payne. Campbell has already filed her Amended Complaint that purports to include Payne as a viable Defendant. The instant matter has yet to advance even beyond the early motion-to-dismiss stage of litigation, and Campbell need not perform any further actions as a result of the entry of default against Payne being set aside. Thus, any prejudice to Campbell is, at most, negligible, and this factor weighs in favor of setting aside the entry of default.

Second,[9] as discussed in detail *infra* Part IV.B, Payne has at least one defense that this Court finds to be meritorious, i.e., this Court's lack of personal jurisdiction over her, and, alternatively, has a meritorious defense on the basis of the Amended Complaint's failure to state a claim upon which relief can be granted, *see infra* Part IV.C. Therefore, this second factor weighs heavily in favor of setting aside the entry of default.

---

[7] Nothing before this Court suggests that Payne had a designated agent to receive service of process.

[8] The first factor is any prejudice to the plaintiff if default is set aside. *World Entm't*, 487 F. App'x at 761.

[9] The second factor is whether the defendant appears to have a meritorious defense. *World Entm't*, 487 App'x at 761.

Third,[10] given the likely lack of proper service of process, *see supra*, Payne's delay and failure to respond appear to be a result of her failure to be properly served—a failure which certainly cannot be construed as her own culpable conduct. Thus, the third factor also weighs in favor of setting aside the entry of default.

In sum, all three factors of the "second step" of the Rule 55(c) analysis weigh in favor of setting aside the entry of default against Payne and, as a preliminary concern, the "first step" of the Rule 55(c) analysis may also require setting aside default due to failure to effectuate proper service of process against Payne. Thus, this Court exercises its discretion to set aside the Clerk's entry of default against Payne. *See Damboch*, 211 F. App'x at 109; *Hritz*, 732 F.2d at 1180; *Salvatore*, 2014 WL 7069509, at *2; *Scholz*, at *3. This Court is mindful of the Third Circuit's preference for allowing claims to be decided on their merits, *see Medunic*, 533 F.2d at 894; *Hritz*, 732 F.2d at 1181; *Mark IV*, 2016 WL 4940314, at *1; *Salvatore*, 2014 WL 7069509, at *2, and, accordingly, will set aside the entry of default against Payne *sua sponte*[11] and consider Campbell's claims against Payne along with her claims against the other eight Defendants in this matter.

## B. The Court Dismisses All Claims Against the Latter Eight Defendants[12] Due to Lack of Personal Jurisdiction

### 1. Rule 12(b)(2) Standard

---

[10] The third factor is whether defendant's delay is due to culpable conduct. *World Entm't*, 487 App'x at 761.
[11] The Third Circuit has expressly recognized district courts' authority to set aside the entry of default *sua sponte*. *See Feliz v. Kintock Grp.*, 297 F. App'x 131, 137-38 (3d Cir. 2008); *Marino v. Usher*, Civ. No. 11-6811, 2015 WL 12806510, at *1 (E.D. Pa. May 1, 2015); *see also Judson Atkinson Candies, Inc. v. Latini–Hohberger Dhimantec*, 529 F.3d 371, 386 (7th Cir. 2008).
[12] The phrase "the latter eight Defendants," as used in this Memorandum Opinion, refers to Colony Surf, Denison, Spriegel, Bonilla, Sarac-Fliman, Payne, Gilley, and Mullin, i.e., all Defendants except for M&T Bank.

Federal Rule of Civil Procedure 12(b)(2) permits a court to dismiss a complaint or portion of a complaint for lack of personal jurisdiction over a defendant. *See* Fed. R. Civ. P. 12(b)(2). "[T]he burden of demonstrating the facts that establish personal jurisdiction" falls on the plaintiff. *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324 at 330 (3d Cir. 2009) (quoting *Pinker v. Roche Holdings Ltd*, 292 F.3d 361, 368 (3d Cir. 2002). "[O]nce a defendant has raised a jurisdictional defense," the plaintiff must "prov[e] by affidavits or other competent evidence that jurisdiction is proper." *Id.* (quoting *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996)).

If the district court does not hold an evidentiary hearing, as is the case in the instant matter, "the plaintiff need only establish a prima facie case of personal jurisdiction." *Id.* (quoting *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007) (internal quotation marks omitted). Moreover, "[i]t is well established that in deciding a motion to dismiss for lack of jurisdiction, a court is required to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff." *Id.* (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003)); *accord O'Connor*, 496 F.3d at 316 (explaining that, prior to an evidentiary hearing or trial, "the plaintiff[s][are] entitled to have [their] allegations taken as true and all factual disputes drawn in [their] favor") (alterations in original) (internal quotation marks omitted).

Personal jurisdiction has both a statutory and constitutional component. *See Metcalfe*, 566 F.3d at 330-35. In regard to the statutory component, a district court typically exercises personal jurisdiction according to the law of the state where it sits. *See* Fed. R. Civ. P. 4(k)(1)(A). Because this Court sits in the United States District Court for the Western District of Pennsylvania, we apply the Pennsylvania long-arm statute, which provides for jurisdiction "based on the most

minimum contact with th[e] Commonwealth allowed under the Constitution of the United States." 42 Pa. Stat. and Cons. Stat. Ann. § 5322(b); *see O'Connor*, 496 F.3d at 316 (citing *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992)).

In regard to the constitutional component, which the Pennsylvania long-arm statute incorporates, *see supra*, plaintiffs must establish that, under the Due Process Clause, the defendants have "certain minimum contacts with . . . [the Commonwealth of Pennsylvania] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation omitted). More specifically, the burden is on the plaintiff to establish "either that the cause of action arose from the defendant's forum-related activities (specific jurisdiction) or that the defendant has 'continuous and systematic' contacts with the forum state (general jurisdiction)." *Mellon Bank (E.) PSFS, N.A. v. DiVeronica Bros., Inc.*, 983 F.2d 551, 554 (3d Cir. 1993) (citing *Bane v. Netlink, Inc.*, 925 F.2d 637, 639 (3d Cir. 1991)); *see Malik v. Cabot Oil & Gas Corp.*, --- F. App'x ---, 2017 WL 4260816, at *1-*2 (3d Cir. Sept. 26, 2017) (discussing the rules for specific jurisdiction and general jurisdiction and citing cases).

## 2. Application to the Latter Eight Defendants

The Court's analysis of whether an exercise of personal jurisdiction satisfies the Pennsylvania long-arm statute and constitutional due process in the instant matter is simple. The Amended Complaint does not allege *any* contacts between *any* Defendants—including M&T Bank—and Pennsylvania, much less contacts sufficient to warrant the imposition of specific or general personal jurisdiction. (*See generally* ECF No. 8.) While M&T Bank chose to waive its

objection to this Court's exercise of personal jurisdiction by removing this matter to this Court (*see* ECF No. 1), the latter eight Defendants have not.

The Amended Complaint never alleges that any Defendants reside in Pennsylvania, are incorporated or have a principal place of business in Pennsylvania, do any business in Pennsylvania, own any property or businesses in Pennsylvania, frequently (or ever) travel to Pennsylvania, or have any contacts with Pennsylvania whatsoever. In fact, the Amended Complaint only refers to Pennsylvania twice in its 24 pages. First, the Amended Complaint states that Richard A. Geist, a former member of the Pennsylvania House of Representatives, obtained the Seller's Closing Statement from M&T Trust Company. (*See* ECF No. 8 ¶ 26.) Second, the Amended Complaint states that Campbell's banker, Bill Rossman, lives in Altoona, Pennsylvania. (*See* ECF No. 8 ¶ 38.) These two passing references to Pennsylvania fail to establish "with reasonable particularity," that any Defendants had sufficient contacts with Pennsylvania to satisfy the statutory or constitutional requirements. *See Mellon Bank*, 960 F.2d at 1123.

According to the allegations of the Amended Complaint, the alleged events pertinent to Campbell's claims occurred in Hawaii and, possibly, New York—not Pennsylvania. (*See generally* ECF No. 8.) Furthermore, according to the Amended Complaint, *all* of the Defendants are citizens of either Hawaii or New York—not Pennsylvania. (*See id.* ¶¶ 10-18.) In sum, nothing in the Amended Complaint or in any other filings by the parties presented to this Court show *any* contacts between *any* of Defendants and Pennsylvania and, to the contrary, the most relevant allegations of the Amended Complaint suggest that the event underlying the subject matter of this case and Defendants are connected to Hawaii and New York—not Pennsylvania. This lack

of allegations establishing any contacts with Pennsylvania requires dismissal pursuant to Rule 12(b)(2).[13]

In Campbell's Response to Defendant Terry Mullin's Motion to Dismiss Plaintiff's Amended Complaint, Campbell explained that she "believes she does not have to prove that Mullin has any contacts in Pennsylvania in order to name him in the suit, and relies on 28 U.S.C. § 1441, diversity of citizenship, to grant the Court jurisdiction over Mullin." (ECF No. 31 at 2.) The Court sympathizes with the difficulty a *pro se* party faces in navigating the complexities of litigation in federal court. This Court even holds *pro se* complaints, "however inartfully pleaded," to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, Campbell's Response misstates a fundamental principle of federal court jurisdiction that this Court cannot ignore.[14]

Subject matter jurisdiction and personal jurisdiction are two distinct, separate, and essential components of the jurisdiction of a federal district court. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583-84 (1999). Campbell is correct that, at least for the purposes of the present motions to dismiss, the Amended Complaint includes allegations sufficient to establish *subject*

---

[13] In contrast to the complete lack of allegations connecting any Defendants to Pennsylvania, some Defendants submitted affidavits asserting that (1) Spriegel lives and works in New York and has never had any personal or business dealing of any kind in Pennsylvania except driving through Pennsylvania on his way to other destinations or family vacations; (2) Bonilla lives and works in New York and has never visited Pennsylvania or had any personal or business of any kind in Pennsylvania; and (3) Sarac-Flihan lives and works in New York and has never had any personal or business dealings of any kind in Pennsylvania except for traveling to Pennsylvania to attend a relative's wedding. (ECF No. 15 at 7; ECF Nos. 15-1, 15-2, 15-3.)

[14] The Court may favorably construe *pro se* pleadings, but *pro se* pleadings must still contain "sufficient factual matter; accepted as true; to state a claim to relief that is plausible on this face." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted); *see also Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015) ("[W]e nonetheless review the [*pro se*] pleading to ensure that it has sufficient factual matter; accepted as true; to state a claim to relief that is plausible on this face.") (internal quotation marks and citation omitted).

-16-

*matter* jurisdiction through the complete diversity of citizenship and an amount in controversy in

excess of $75,000 pursuant to 28 U.S.C. § 1332(a) and 28 U.S.C. § 1441(b). However, the Amended

Complaint fails to allege facts sufficient to establish *personal* jurisdiction as required by the United

States Constitution, the Federal Rules of Civil Procedure, and state long-arm statutes.

The presumptively true allegations of the Amended Complaint fail to show any

connection between the events underlying the subject matter of this lawsuit and Pennsylvania or

any contacts between Defendants and Pennsylvania, let alone sufficient contacts for the purposes

of personal jurisdiction. This Court holds that Defendants do not have sufficient contacts with

Pennsylvania to establish personal jurisdiction and that, given the allegations contained in the

Amended Complaint and the content of Defendants' filings, amendment would be futile.

Therefore, the Court dismisses all claims of the Amended Complaint made against the latter eight

Defendants with prejudice pursuant to Rule 12(b)(2).[15]

## C. All Claims Against M&T Bank Are Dismissed for Failure to State a Claim Upon Which Relief Can Be Granted

### 1. Rule 12(b)(6) Standard

A complaint may be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure

to state a claim upon which relief can be granted." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786

(3d Cir. 2016). But, detailed pleading is not generally required. *Id.* The Rules demand only "a

short and plain statement of the claim showing that the pleader is entitled to relief" to give the

---

[15] The Court notes that, even if this Court had personal jurisdiction over all Defendants, the Court would dismiss the Amended Complaint against all Defendants, including Payne, for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) for the same reasons stated *infra* Part IV.C in regard to M&T Bank. Beyond the discussion *supra*, the Court will not address Defendants' objections regarding improper service and improper venue because those issues are mooted by the present disposition of this matter.

defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp.*
*v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).

Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the
sufficiency of a complaint must take three steps.[16] First, the court must "tak[e] note of the
elements [the] plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009).
Second, the court should identify allegations that, "because they are no more than conclusions,
are not entitled to the assumption of truth." *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662
F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the
assumption of truth.") (citation omitted). Finally, "[w]hen there are well-pleaded factual
allegations, [the] court should assume their veracity and then determine whether they plausibly
give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when
the plaintiff pleads factual content that allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged." *Id.; see also Connelly*, 809 F.3d at 786. Ultimately,
the plausibility determination is "a context-specific task that requires the reviewing court to draw
on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### 2. Campbell's RICO Claim (Count I) is Time Barred and Insufficiently Pleaded

In Count I of the Amended Complaint, Campbell alleges that M&T Bank colluded with
Colony Surf in a racketeering conspiracy to wrongfully deprive Campbell of the equity in the
Property. (*See generally* ECF No. 8.) In a prior decision, this Court dismissed Campbell's RICO

---

[16] Although *Iqbal* described the process as a "two-pronged approach," *Iqbal*, 556 U.S. at 679, the Supreme
Court noted the elements of the pertinent claim before proceeding with that approach, *id.* at 675–79. Thus,
the Third Circuit has described the process as a three-step approach. *See Connelly*, 809 F.3d at 787; *Burtch
v. Milberg Factors, Inc.*, 662 F.3d 212, 221 n.4 (3d Cir. 2011) (citing *Santiago v. Warminster Township*, 629 F.3d
121, 130 (3d Cir. 2010)).

claim for failure to allege sufficient facts to support a timely claim, *see Campbell*, 2017 WL 1091939, at *10-*11, but granted Campbell leave to amend to allege the specific elements of a RICO claim— specifically to allege an enterprise and predicate acts—and to allege facts demonstrating that her RICO claim is not barred by the passage of the relevant statute of limitations. *Id.* at *11. The Amended Complaint includes many new allegations, but it still does not plead facts sufficient to make out a timely RICO claim, and, consequently, the Court will dismiss Count I of the Amended Complaint.

Looking first at timeliness, as this Court stated previously, *see Campbell*, 2017 WL 1091939, at *10-*11, RICO claims are subject to a four-year statute of limitations. *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 152-56 (1987). Here, Campbell's RICO claim is entirely based on events that occurred in or before 2004—over 10 years prior to Campbell's filing of a Praecipe for Writ of Summons in the Blair County Court of Common Pleas on August 10, 2015. The applicable four-year statute of limitations lapsed during the passage of more than a decade since the alleged events underlying this suit.

Campbell seeks to explain her delay in filing suit by arguing that the she did not obtain the Seller's Closing Statement from the October 2004 sale of the Property until 2012. (*See* ECF No. 11 at 2.) However, this justification does not align with the facts as alleged in the Amended Complaint or the law on tolling statute of limitations periods.

The test of whether the statute of limitations is tolled does not look at when a plaintiff learned of his or her claim; it focuses on when a plaintiff *should* have learned of his or her claim. *See generally Fine v. Checcio*, 870 A.2d 850 (Pa. 2005). Stated differently, the discovery rule focuses not on "the plaintiff's actual knowledge, but rather on 'whether the knowledge was known, or

through the exercise of diligence, knowable to'" the plaintiff. *Bohus v. Beloff*, 950 F.2d 919, 925 (3d Cir. 1991) (quoting *O'Brien v. Eli Lilly & Co.*, 668 F.2d 704, 711 (3d Cir. 1981)). A plaintiff is "obligated to exercise reasonable diligence in ascertaining the existence of the injury and its cause." *Mest v. Cabot Corp*, 449 F.3d 502, 511 (3d Cir. 2006) (citing *Bohus*, 950 F.2d at 925). "Moreover, the plaintiff attempting to apply the discovery rule bears the burden of demonstrating that he exercised reasonable diligence in determining the existence and cause of his injury." *Id.* (citing *Cochran v. GAF Corp.*, 666 A.2d 245, 249 (Pa. 1995)).

Campbell has not met this burden. The Seller's Closing Statement, despite Campbell's view that it is "the puzzle piece she was missing" (ECF No. 1 ¶ 23), provides no unique or necessary information to the Campbell's RICO claim and was not the catalyst behind Campbell's belief that Defendants were engaging in a racketing conspiracy against her.

To the contrary, the allegations of the Amended Complaint are remarkably similar to the allegations provided by Campbell in her FOIA request to the Federal Reserve in 2005. *(See* ECF No. 8-4, Ex. 4.) The Federal Reserve restated Campbell's statements in her FOIA request in its response to Campbell: "M&T engaged in deceptive practices by conspiring with your cooperative's management to initiate foreclosure proceedings and to keep the equity gained on the sale of your apartment." *(Id.)* Thus, according to Campbell's FOIA request, which she attached as an exhibit to the Amended Complaint, Campbell had firmly formed her suspicions regarding Defendants' allegedly illegal activities as early as 2005, when she made her FOIA request. Campbell offers no explanation for the seven-year delay between her FOIA request and her efforts to obtain the Seller's Closing Statement or why she waited over a decade to file suit

when she had formed the underlying suspicions of illegal conduct in 2005 with sufficient certainty to include her accusations in an FOIA request to the Federal Reserve.

Moreover, the information contained in the Seller's Closing Statement, even were it necessary to determine the existence of Campbell's claims, could have been obtained through multiple other reasonably accessible means. This real property transaction is necessarily a matter of public records that, through the exercise of due diligence, could have been obtained and reviewed long before 2012. As early as 2005, Campbell also possessed the loan balance provided by M&T Bank, which shows that M&T Bank did not "zero out" the Loan and that no equity remained from the $615,000 purchase price after the deduction of M&T Bank's loan balance, the outstanding balance of assessments and fees due to Colony Surf, the realtor fee, and the closing costs. (*See id.*)

In essence, the information contained in the Seller's Closing Agreement, while arguably a more specific breakdown of sale proceeds between the parties, did not provide new information necessary for Campbell's RICO claim to accrue and did not act as a catalyst for Campbell's suspicions of collusion—suspicions that date back to at least her 2005 FOIA request. Campbell has not met her burden of "demonstrating that [s]he exercised reasonable diligence in determining the existence and cause of [her] injury." *Bohus*, 950 F.2d at 925 (citing *Cochran*, 666 A.2d at 249). The discovery rule does not toll the statute of limitations for Campbell's RICO claim because the Seller's Closing Statement was neither necessary for Campbell to "ascertain[] the existence of the injury and its cause," *Mest*, 449 F.3d at 511(citing *Bohus*, 950 F.2d at 925), nor was it unable to be obtained through the exercise of due diligence. *Bohus*, 950 F.2d at 925 (citing

*O'Brien*, 668 F.2d at 711). As a result, Count I, having accrued at least ten years ago, is time barred by the four-year statute of limitations for RICO claims.

Alternatively, even had Count I been timely filed, the allegations of the Amended Complaint are insufficient to plead a plausible RICO claim. To plead a RICO violation, a plaintiff must allege four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004) (citing *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985)), *abrogated in part on other grounds by Twombly*, 550 U.S. at 557. The pattern of racketeering activity requires at least two acts of racketeering—so-called predicate acts—within a period of ten years. 18 U.S.C. § 1961(5); *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 363 (3d Cir. 2010).

The Court will not delve too deeply into the Amended Complaint's failure to sufficiently plead the elements of a RICO claim because of our determination that passage of the statute of limitations bars Count I. However, the Amended Complaint, consisting of confusing bare suspicions and accusations, fails to plausibly allege the existence of an enterprise or any predicate acts of racketeering. Most fundamentally, Campbell's interest, via the Trust, in the Property was a sublease that was cancelled by order of Hawaii state court. (*See* ECF No. 8-1. Ex. 1; ECF No. 8-11. Ex. 11). At the time the Property was sold, Campbell had *no* interest and *no* equity in the Property.[17] In other words, M&T Bank could not have engaged in an illegal racketeering scheme to steal Campbell's interest in the Property because Campbell had no interest in the property

---

[17] The order issued by the Circuit Court for the First Circuit of Hawaii specifically provided, "Defendant [Trust] and all persons claiming any interest in the leasehold property described in the Proprietary Sublease . . . are hereby forever barred and foreclosed of and from any right, title, and interest and claims at law or equity in and to said Property." (ECF No. 8-1, Ex. 1 at 5.)

following the cancellation of the sublease via Hawaii state court order of March 27, 2003. (*See* ECF No. 8-1, Ex. 1.) Campbell may personally "consider [M&T Bank to be] a criminal enterprise" (ECF No. 8 ¶ 25), but, based on the allegations of the Amended Complaint, the RICO Act does not.

Therefore, Campbell's RICO Claim in Count I of the Amended Complaint is dismissed with prejudice as time barred and for failure to include sufficient allegations to make out a plausible entitlement for relief. *See Iqbal*, 556 U.S. at 679; *Connelly*, 809 F.3d at 786.

### 3. Campbell's Financial Institution Fraud Claim (Count II) is Improperly Reasserted and, as in the Court's Prior Decision, Fails Because There is No Private Right of Action

In Count II of the Amended Complaint, Campbell asserts a claim for "financial institution fraud" in violation 18 U.S.C. § 1344, premised on allegations that M&T Bank "zeroed" out her Loan when it merged with Keystone Bank and conspired with her condominium association to defraud her. (*See* ECF No. 8 ¶¶ 72, 79-81.) Count II will be dismissed for the same reasons the Court already dismissed Campbell's claim under 18 U.S.C. § 1344 in her original Complaint. *Campbell*, 2017 WL 1091939, at *6.

Campbell brings Count II under 18 U.S.C. § 1344, which provides for *criminal* penalties and does not create a private right of action. *Edmonds v. Seavey*, No. 08-cv-5646, 2009 WL 2949757, at *6 (S.D.N.Y. Sept. 15, 2009) ("[T]here is no private cause of action under 18 U.S.C. § 1344.") (citation omitted); *Holmes v. MBNA Am. Bank, N.A.*, No. 5:05-cv-16, 2007 WL 952017, at *1 (W.D.N.C. Mar. 27, 2007) ("18 U.S.C. § 1344 is a criminal statute and provides no private right of action"); *Milgrom v. Burstein*, 374 F. Supp. 2d 523, 529 (E.D. Ky. 2005) (stating that no private right of action exists under 18 U.S.C. § 1344). This Court previously explained that 18 U.S.C. § 1344

-23-

does not provide for a private cause of action when we dismissed—with prejudice and without leave to amend—Campbell's claim for bank fraud in her original Complaint.

Section 1344 and courts' interpretation thereof have not changed since this Court's prior decision of March 22, 2017; no private cause of action exists under this statute. Accordingly, Count II of the Amended Complaint is dismissed with prejudice because the inclusion of Count II in the Amended Complaint violates this Court's prior order and because Count II fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).

### 4. Campbell's "Interference" Claim (Count III) Alleges No Misconduct by M&T Bank and Provides No Authority to Establish a Cognizable Cause of Action

In Count III of the Amended Complaint, Campbell brings a claim for "Interference by Muriel Payne of the New York Federal Reserve." (ECF No. 8 at 20.) Campbell speculatively asserts that Payne was "blocking" a response to Campbell's FOIA request and "feeding" information to M&T Bank regarding the FOIA request. (*Id.* ¶¶ 83-84.)

Campbell offers no citations to statutes, regulations, case law, or any other authority to establish a basis for her "interference" claim, nor is the Court able to recognize a cause of action under which Campbell's allegations could conceivably fall. Thus, the Court holds that Count III fails to state a claim upon which relief can be granted because the Court cannot identify a legally-cognizable cause of action that aligns with the allegations of Count III, especially given that a separate RICO claim—which, in the Court's estimation, is the most analogous cause of action to Campbell's allegations in Count III—has already been considered and dismissed *supra* Part IV.C.2.

Additionally, even were the Court able to discern a cognizable cause of action

corresponding with Count III, Campbell does not allege misconduct by M&T Bank. At best, Count III states that "Payne fed information about [Campbell's FOIA] filings directly to M&T." (ECF No. 8 ¶ 84.) However, M&T Bank receiving information from a Federal Reserve employee regarding a FOIA request about the sale of a property by M&T Bank scarcely makes out a cognizable claim against M&T Bank.

Therefore, Count III is dismissed with prejudice because its presumptively true allegations and the reasonable inferences therefrom fail to state a plausible claim upon which relief can be granted. *See Iqbal*, 556 U.S. at 679; *Connelly*, 809 F.3d at 786.

### D. All Claims of the Amended Complaint Are Dismissed With Prejudice

Whether to grant a party leave to amend a pleading is within the sound discretion of the trial judge. *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 116 (3d Cir. 2003). This Court has discretion to deny leave to amend if it is apparent from the record that: (1) the party has demonstrated undue delay, bad faith or dilatory motives; (2) the amendment would be futile; or (3) the amendment would prejudice the other party. *Id.* (citing *Foman v. Davis*, 371 U.S. 178 (1962)).

In the present case, the Court relies on only the futility of amendment in dismissing all of the claims of the Amended Complaint with prejudice and denying leave to amend the Amended Complaint. "Futility" challenges an amendment's legal sufficiency. *Foman*, 371 U.S. at 182. In assessing futility, courts apply the same standard of legal sufficiency as applied under Federal Rule of Civil Procedure 12(b)(6). *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997); *see also Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988) ("Futility is determined by the likelihood that the content of the amendment will survive a renewed motion

to dismiss"). The Third Circuit has noted that "an amendment would be futile when the complaint, as amended, would fail to state a claim upon which relief could be granted." *Id.*

As discussed *supra*, the Court finds that further amendment of the Amended Complaint would be futile. The allegations of the Amended Complaint and all other information before this Court suggests that further amendment would not allow this Court to exercise personal jurisdiction over the latter eight Defendants because they lack sufficient contacts with Pennsylvania. Furthermore, the Court is convinced Campbell's RICO claim, bank fraud claim, and "interference" claim cannot be amended such that they would survive a third series of motions to dismiss. The allegations of the Amended Complaint demonstrate that Campbell's claims are time barred, cannot be brought by private plaintiffs, or are otherwise fatally flawed for the reasons discussed throughout this Memorandum Opinion. Consequently, the Court concludes that any amendment of these claims would be futile. All counts of the Amended Complaint against all Defendants are dismissed with prejudice and Campbell is denied leave to amend the Amended Complaint.

## V.    Conclusion

In sum, the Court sets aside the Clerk's entry of default against Payne for the reasons stated *supra* Part IV.A. The Court then holds that we lack personal jurisdiction over the latter eight Defendants and that the presumptively true factual allegations of the Amended Complaint fail to plausibly give rise to entitlement to relief on any of its three counts. Thus, Defendants' four motions to dismiss Plaintiff's Amended Complaint (ECF Nos. 9, 14, 16, 30) are granted and the Amended Complaint is dismissed in its entirety with prejudice.

A corresponding order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DEBRA HEVERLY CAMPBELL, and** ) | **Case No. 3:16-cv-118** |
| **POHAKU FUNDING AND INVESTMENT** ) | |
| **CORPORATION,** *it its capacity as Trustee,* ) | **JUDGE KIM R. GIBSON** |
| *for the* **2895-201 KALAKAUA LAND** ) | |
| **TRUST and POHAIKEALOHA TRUST,** ) | |
| **DEBRA HEVERLY CAMPBELL** *as president* ) | |
| *of* **POHAKU FUNDING AND** ) | |
| **INVESTMENT CORPORATION, and** ) | |
| **DEBRA HEVERLY CAMPBELL AND JADE** ) | |
| **MAKANA HEVERLEY-CAMPBELL** *as* ) | |
| *beneficiaries of* **POHAIKEALOHA TRUST.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **M&T BANK, COLONY SURF LTD.,** ) | |
| **DAVID SPRIEGEL, GERALYN BONILLA,** ) | |
| **PERI SARAC-FLIHAN, WILLIAM E.** ) | |
| **DENISON, R. STEVENS GILLEY, TERRY** ) | |
| **MULLIN, AND MURIEL PAYNE,** ) | |
| ) | |
| **Defendants.** ) | |

## ORDER

NOW, this $\underline{12^{th}}$ day of January 2018, upon consideration of the four motions to dismiss filed by Defendants M&T Bank, Colony Surf Ltd., David Spriegel, Geralyn Bonilla, Peri Sarac-Flihan, William E. Denison, R. Stevens Gilley, and Terry Mullin (ECF Nos. 9, 14, 16, 30), and for the reasons set forth in the Memorandum Opinion accompanying this Order, these four motions to dismiss (ECF Nos. 9, 14, 16, 30) are **GRANTED.**

It is **HEREBY ORDERED** as follows:

1) The Clerk's entry of default against Muriel Payne (ECF No. 33) is **SET ASIDE** for the reasons set forth in the foregoing Memorandum Opinion.

2) All counts and claims of the Amended Complaint are **DISMISSED WITH PREJUDICE** as to all Defendants.

3) Plaintiff is **DENIED** leave to amend any of the counts or claims of the Amended Complaint.

**BY THE COURT:**

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**